UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal Case No. 09-346 |
| v. | : | |
| | : | |
| PETER ALESZCZYK | : | |

### Defendant's Sentencing Memorandum

I.    **Preliminary Statement**

Peter Aleszczyk comes before the Court for sentencing having pleaded guilty to one

count of wire Fraud, 18 U.S.C. § 1343 and one count of Mail Fraud  18 U.S.C. § 1341.  As set

forth in the Pre-Sentence Investigation Report (PSR), this is not Mr. Aleszczyk's first encounter

with the law.  It is, however, at age 44, by far his most significant and substantial.  He has never

before served meaningful time and he has never before faced the sobering consequences of his

anti-social behavior. The sudden realization that he must reverse his life-long proclivity for

taking the easy way out and trying to get over when things got tough, has been made all the more

painful because, for the first time, he has a meaningful reason to live a law-abiding life.  After

spending most of his adult life alone, he finally entered a serious relationship.  He married his

present wife, Kathy, in 2004, and readily took on the role of father to her three kids. They would

have two more children of their own . By all accounts, he has been a dedicated husband and

father.  He agonizes over the fact that through his wrongdoing, he has separated himself from

them and is not be there to care for them as they grow up.

Although he had frequently lived on the edge of the law, committing mostly petty and

thoughtless crimes, Peter finally felt that he could put his checkered past behind him and live an

honest life during his marriage to Kathy. He had started to develop a successful business in the

employment field, providing workers for the pharmaceutical industry. Although his business appeared to do well at first, and he even took on several employees, he was constantly in debt. He saw himself helping provide a good life for his children by developing his business, when in reality he was putting himself in an insurmountable hole. Unfortunately, when business began to falter, he reverted to his old behavior. The story is a typical one. One this Honorable Court has no doubt heard countless times over the years. The plan was to place a few ghost employees, collect enough from the customer to make ends meet, and when things picked up, he could pay them back. Or so he convinced himself. Now, because he didn't have the courage or fortitude to admit to himself or tell his wife that he was failing, he finds himself standing before the Court facing several years in federal prison. This is not meant to excuse his conduct. Peter's actions were reprehensible and despicable. It is offered merely as an answer to the obvious question, "why is this time any different?" Peter knows just how despicable his actions were and is only thankful that he has at least finally reached the bottom.

Once his scheme was discovered, it did not take Peter long to comprehend how low he had gone and how messed up his life was. He provided immediate access to his computers to the investigating agents so that they could develop the case. He readily admitted to his own wrongdoing. He agreed to plead guilty to an information and did not contest pre-trial detention. At the time this seemed like the best way to evidence his complete acceptance of responsibility. He failed to realize, however, that he could have demonstrated his acceptance more fully by providing cooperation regarding other individuals to the government. Very shortly after retaining undersigned counsel, he asked to meet with the government in an effort to cooperate. He had already provided a description of his actions, admitting to his crime and accepting responsibility. Undersigned counsel made several efforts to convince the government that it

2

should afford Peter the opportunity to cooperate.  A detailed description of matters in which he could be helpful was provided. Unfortunately, the government refused to allow Mr. Aleszczyk to cooperate, based in large part on the fact that he did not agree to cooperate prior to being taken into custody and was thus less valuable.

Mr. Aleszczyk's detention has been particularly difficult because of his severe rheumatoid arthritis (RA).  He was diagnosed with RA by Dr. Jennifer Kwan-Morley in 2007. Prior to his incarceration, Peter received periodic treatment with Remicade.  This treatment requires infusion therapy.  After his surrender, Peter's RA became much more severe.  He has repeatedly requested treatment but to date none has been provided.  His situation has been compounded due to the inmate population problem.  He spent the better part of his pre-trial detention at the Northern Neck facility in Virginia, where no care has been provided for his condition.  He is literally covered with sores.  He has inflamed joints and is in severe pain from the burning and itching caused by RA.  Moreover, the inflammation cause by his condition can lead to permanent bone and joint damage.

As a further consequence of the scarring and burning RA inflammation, Peter has essentially confined himself to his cell because of concerns that other inmates would think he had a communicable disease which could lead to his being quarantined and unable to communicate with his family. Mr. Aleszczyk's conditions of confinement have thus been much more harsh than the ordinary case.   In United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997) it was held that a district court may depart if it finds unusual or exceptional hardship in conditions of confinement. Likewise conditions of confinement can entitle a defendant to a downward departure pursuant to United States v. Brinton, 139 F.3d 718 (9th Cir. 1998). Accordingly, the severe pain and potential medical complications of his condition which have

3

been exacerbated by the conditions of his confinement support a downward variance from the sentencing guidelines in this matter.

In addition to demonstrating his rehabilitation through his effort at cooperation, Peter also began working on his recovery and on his future.   Peter has also turned his attitude and personal life around.  He has worked diligently to confront and overcome his personality disorder issues. Most importantly he now believes in himself and his ability to make a good life for his family through dedication and hard work.

**II.     The Sentencing Guidelines are Advisory in Nature and Provide for a Sentence in this Matter that is Greater than Necessary to Achieve the Purposes of Sentencing Set Forth at 18 U.S.S.C. 3553(a)**

As the Court is well aware, the United States Supreme Court in the consolidated cases of *United States v. Booker* and *United States v. Fanfan*, 125 S. Ct. 738 (2005), ruled that the language in the Sentencing Reform Act making the sentencing guidelines mandatory was to be stricken. The guidelines thus, in the words of the Court, become "effectively advisory" in all cases. *Id.* at 757. This made the guidelines just one factor among several that sentencing courts are required to consider in imposing a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a) (2).

According to 18 U.S.C. § 3553(a) (2) the four purposes of sentencing are retribution, deterrence, incapacitation and rehabilitation.  In determining the sentence minimally sufficient to comply with the Section 3553(a) (2) purposes of sentencing, the Court must consider several factors listed in Section 3553(a).  These are (1) "the nature and circumstances of the offense and history and characteristics of the defendant;" (2) "the kinds of sentencing available;" (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the

4

need to provide restitution where applicable. 18 U.S.C. § 3553(a) (1), (a) (3), (a) (5)-(7). Thus, if the Court finds that the sentence called for by the now advisory Sentencing Guidelines is greater than necessary to comply with the purposes of sentencing, § 3553(a) requires the Court to impose a more lenient sentence, and gives the Court authority and discretion to do so.

Any question regarding the advisory nature of the guidelines was put to rest by the Supreme Court in *Kimbrough v. United States*, 128 S. Ct. 558 (2007) and *Gall v. United States*, 128 S. Ct. 586 (2007). Those cases stand for the proposition that while "A district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within Guidelines sentence is 'greater than necessary' to serve the objections of sentencing." *Kimbrough*, 128 S.Ct. at 564. Moreover … "while the statute still requires a court to give respectful consideration to the Guidelines, *see, Gall*, 128 S.Ct. at 594, 596, *Booker* 'permits the court to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 128 S.Ct. 570.

Under § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant." But under the Federal Sentencing Guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic record, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The Guidelines' prohibition against considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. Thus, in a case such as the present one where the

defendant's history and character are positive, consideration of all of the § 3553(a) factors call for a sentence below the guideline range.

## IV.    A Sentence Below the Guidelines is Warranted

The foregoing analysis supports the position that every individual sentence requires careful consideration of the 3553(a) factors to determine a sentence sufficient but not greater than necessary.  A cursory review of the defendant's criminal history might lead the Court to conclude that a very significant sentence is required.  A more careful look at the nature and circumstances of the defendant and the offense reveals a different conclusion, however. A careful analysis shows an individual who has the potential to succeed in life and be a contributing member of society. It also shows an individual who accepts the gravity of his actions and understands the damage he has done to others. Finally it shows an individual who has been rehabilitated and is prepared to work to become a productive member of society. Mr. Aleszczyk has been gainfully employed his entire adult life.  He has been an involved parent, not only to his own two children, but also to his wife's three children from her prior marriage.

Mr. Aleszczyk has done everything in his power to improve himself since the act that resulted in these charges.  He  fully disclosed his own wrongdoing and attempted to provide information that would lead to the prosecution of others.  Unfortunately, because he waited too long and his pre-trial detention prevented him from cooperating, and because the government dismissed out of hand his information related to other criminal activity, he was unable to provide information that would allow for a downward departure motion.  All of the above conduct is substantial evidence of  pre-sentence rehabilitation that would support a downward departure from the sentencing guidelines pursuant to *United States v. Sally*, 116 F. 3d 76 (3rd Cir. 1997)

6

even absent a government motion. In light of *Kimbrough and Gall,* these factors clearly support a variance pursuant to 18 U.S.C. § 3553 (a)(1).

Mr. Aleszczyk's own words show that he understands how wrong his actions were as well as the significance of the crossroads he now stands at. "My experiences over the last year have provided the wake up call that will ensure that my actions are not repeated in any way." "I realize that I brought all this upon myself" The letters of his family and friends speak of a decent caring individual who went down the wrong road. The nature of the defendant and the circumstances of the instant offense indicate that he can be one of those few offenders who actually make it away from crime and back into mainstream society.

The question then becomes what sentence is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). A proper analysis of Mr. Aleszczyk' characteristics and the potential range of sentences available to the court indicates that an appropriate sentence can be fashioned that is significantly below the guideline range. Among those factors are:

- His medical condition and the extreme hardship of his pre-trial detention;
- His effort to cooperate, albeit unsuccessfully;
- His greater than typical acceptance of responsibility, as evidenced by his agreement to detention and effort to cooperate;
- His family circumstances including the extreme hardship placed on his children;
- The significant amount of restitution he owes, along with the numerous civil suits filed against him.

When considered in the totality of the circumstances, these strong mitigating factors, should be given consideration. It is respectfully submitted that when the Court considers all that

7

Mr. Aleszczyk has done to address the issues that led to his incarceration, along with his

significant progress in rehabilitation, it can only conclude that a relatively lenient sentence is

appropriate.

                      Respectfully submitted,

                      Patrick J. Egan, Esq.
                      Fox Rothschild LLP
                      2000 Market Street, 10th Floor
                      Philadelphia, PA  19103
                      Tel:  (215) 299-2825
                      Fax:  (215) 299-2150

Date:  March 16, 2010             Attorney for the Defendant

8

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal Case No. 09-346 |
| v. | : | |
| | : | |
| PETER ALESZCZYK | : | |

**EXHIBIT LIST**

**A. Letter of Peter Aleszczyk**

**B. Letters from Family, Friends and Community**

**C. Photographs of Defendant and Family**

9

Exhibit A

Dear Judge Joyner,

I've had 307 days to think about what I have done, how it has hurt my children and injured my victims. I have realized that I brought all this upon myself. Please consider this letter in deciding what punishment you will give me.

I would like to apologize to Contemporary Staffing Solutions and Mr. Pearson for my actions. The deception, which is the reason we are here today. I'm also sorry for the stress, aggravation, and strain it placed on the company, his friends & family. I understand my actions affected more than the companies bank account. I had no right to make my problems theirs. I am very sorry for what I've done and the lives I've affected.

I also need to apologize to my friends, family, my mother, wife & children. I humiliated, embarrassed, and disappointed myself and the people who trusted me. I am very sorry. One of the most important aspects of being a son, husband & father is being present. I failed and let everyone down. I've put a ridiculous amount of pressure on my mother, who should be enjoying life and her grandchildren instead of worrying about her son and his family. I've left my wife with the entire responsibility of raising 5 children. My children have suffered the most. My wife and I have always tried to be present at every school activity, social or sporting event. My actions have made that impossible.

My experiences over the last year have provided the wake up call that will ensure my actions will not be repeated in any way. The most important reason of all is my family — my children. It's been 307 days since I've seen my kids. The strongest pain has been listening to the broken hearts of my kids and accepting the fact I'm responsible for their pain. Just the other night on the phone my 8 year old daughter starting crying because I'll miss this years Daddy - Daughter Dance for Brownies. Last July 10 I made a promise to my Daughter. I told her " when Daddy comes home - He'll never leave you again." I will not let her or my family down ever again.

Sincerely,

Peter Alleszwryk
40858-066

Exhibit B

2717 **Boudwin Avenue**
**Upper Chichester, PA 19061**
**August 26, 2009**

**RE:  Peter Aleszczyk**

**To Whom It May Concern:**

**We have known the above, Peter Aleszczyk for approximately 15 years.  He has been like family with us, as Peter was an only child and whose parents resided in Florida.  He and our son have been the best of friends for many years.  In fact, Peter was our son's best man and our son was his best man for their weddings.  We have found Peter to be caring, compasionate, lovng,  with a great sense of humor and a great personality.  In addition, Peter comes from a loving family whom we have gotten to know also.**

**We do believe that the three most important times in Peter's life were the day of his wedding and the birth of his two children. Katie and Peter.  Pete was an outstanding father – taking his children to many various functions.  He never missed a school functiom for his children, whether it be for sports or something academically.  Many times he would take his two children with him to professinal outings ( such as baseball games, etc) and was always able to handle them on his own when his wife could not attend.  From the day these children were born, he was able to handle them alone with lots of love and compasion for each child.  Peter loves his family dearly, as do his family love him.**

**However, there is something missing in the Aleszczyk home that is very evident the moment you walk into their home.  Peter is no longer there.  The children are devastated and asking almost daily for their "Daddy."  This experience has caused so much trauma to these children that they are both now seeking psychological counseling.  Bringing their"Daddy" home, in as short a time as possible, would be the very best present these lonely children every had.**

*Lawrence M. Spedden*
**Lawrence M. Spedden. Sr.**

*A. Gail Spedden*
**A. Gail Spedden**

**gs**

10/19/09

The Honorable J. Curtis Joyner
8613 United States Courthouse
601 Market Street
Philadelphia, Pa. 19106

RE: Peter Aleszczyk

Dear Judge Joyner,

I am writing to you about Peter Aleszczyk. Peter is my brother-in-law, married to my sister Kathy. I have known Pete for 10 years.

When I think about Pete my thoughts go immediately to him as a father. There are countless memories of him with the children. Pete gave the gift of time over & over to his children as well as his 3 step children.

When you listen to his children you will hear things like "I know how to flip the pancakes", "my dad always lets me help." Or can we get the cookbook and pick something to make my dad always helps us bake. Pete would not just put the ingredients into the cake he would spend time helping the kids create a cake. For example one cake comes to mind where they made a sheet cake & then took the center out & put some type of blue pudding in it & decorated the edges of the cake causing the cake to look like a swimming pool. The kids were so proud & excited about their creation.

No matter what it was; baking, playing ball, playing in the snow or on the beach, cutting the grass or blowing the leaves Pete included all the children & spent the time to make them feel special & proud of what they accomplished.

My last memory of Pete at home is from Mother's day this year. Kathy had to work. When I knew Kathy was done working I called her to wish her a Happy Mother's Day. We talked until she arrived home. I was still on the phone when she got home & she said "I have to go" Pete & the kids are standing here all dressed up. They cooked me dinner & made a cake. The kids are so excited I have to go.

I am a family member outside this home. and what I see is a man that loves his family and children that adore their father.

Sincerely,
Frances Hughes

The Honorable J. Curtis Joyner                    10-17-09
8613 United States Courthouse
601 Market St
Phila, PA 19106

RE: Peter Aleszczek

Dear Judge Joyner,

My name is Vincent Hughes and I have known
Peter Aleszczek for over 10 years. He is my Brother-in-
law.

In that time I have seen him raise 2 wonderful
children, care for his Mother, & care & provide for
his 3 step children.

He has always been a doting father and is
very involved in the kids lives. From playing ball in
the yard, to adjusting the seats on their bikes, Pete has
been there.

His young son Peter told me ~~to think~~ "I miss my
Dad, he always calls me Buddy when he comes home."
His ~~entire~~ family is lost without him.

My wife & I try to help Kathy, Peter's wife, as much
as possible. But there is only so much we can do. Kathy's
daily burden is seemingly unbearable, ~~and~~ she has to
constantly keep a smile on her face, as all 5

children

I only hope the Court can find a way for Peter to be reunited with his family, and begin to work toward a new life.

I know Peter, and I know he can do a lot of good with his life, if given ~~the~~ another chance.

.

Sincerely

Vincent J. Hughes
210 Pickwick Rd
Havertown PA 19083



**SAINT FRANCIS DE SALES SCHOOL**
917 S 47th Street + Philadelphia, PA 19143
PH: 215-387-1749                    FAX: 215-387-6605

October 20, 2009

To Whom It May Concern:

I have known Peter Aleszczyk for eight years and was as shocked as everyone else to hear of his arrest in May.  As husband to my niece and father to my grandnieces and grandnephews, I have seen him as a loving and caring father who spent more than the normal amount of time with his children and assisting in home chores.  He has always been thoughtful, kind and generous and is no physical threat to anyone.  It appears evident that his business dealings led to great financial losses to others, and that justice must be done.

He has already spent more than four months in prison, and truly regrets his mistakes.  For him to spend many years in prison would be a cost to the government and would not assist in recouping lost funds.  It is my prayer that he would be placed under house arrest, where he could care for the children while his wife worked, and perhaps create a way to earn money that would repay the money to those who lost it. I have spent more than 25 years working here in West Philadelphia where many of our students have fathers in prison.  I see the suffering in their young lives and cannot wish this on any child.  Please think of the children!

Thank you in advance for considering my plea.

Hopefully,

*Sister Constance Marie, IHM*

Sister Constance Marie, IHM

Exhibit C











**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Case No. 09-346 |
| v. : | |
| : | |
| PETER ALESZCZYK : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant's Sentencing Memorandum has

been served upon:

> Ewald Zittlau, Esquire
> United States Attorney's Office
> Suite 1250
> 615 Chestnut Street
> Philadelphia, PA  19106

by electronic mail on this date:  March 16, 2010.

> /s/ Patrick J. Egan
> Patrick J. Egan
> Fox Rothschild LLP
> 2000 Market Street, 10th Floor
> Philadelphia, PA  19103
> (215) 299-2825

10